Theodore **COUSER**, Petitioner,

v.

**J. D. COX, Superintendent, Virginia State Penitentiary, Respondent.**

Civ. A. No. 71–C–11–R.

United States District Court,
W. D. Virginia,
Roanoke Division.

March 27, 1971.

Overton P. Pollard, Asst. Atty. Gen., Richmond, Va., for respondent.

## OPINION and JUDGMENT

DALTON, Chief Judge.

This case comes before the court upon a petition for a writ of habeas corpus, filed in forma pauperis by Theodore Couser, a state prisoner, pursuant to the provisions of 28 U.S.C. 2241. Petitioner is currently serving two sentences totalling seventy years pursuant to judgments of the Hustings Court of the City of Roanoke imposed on January 24, 1968 and February 19, 1968 for two separate incidents of robbery by violence. In each of the petitioner's cases, he was represented by court appointed counsel, entered a plea of not guilty and was tried and convicted by a jury. Petitioner in both cases assisted by court appointed counsel, sought and perfected an appeal to the Virginia Supreme Court of Appeals which refused his writ of error and supersedeas. Petitioner has also sought state habeas corpus relief and was given a plenary hearing in the Hustings Court for the City of Roanoke on January 5 and January 7, 1970. That court after a full evidentiary hearing denied the petitioner's writ of habeas corpus and the Virginia Supreme Court of Appeals denied the writ of error when that proceeding was challenged on appeal.

In the present federal habeas corpus proceeding, the petitioner alleges three instances of error committed by the state courts in which his constitutional rights have been violated. Petitioner states that in Case No. 36407 he was deprived of the opportunity to have a preliminary hearing of the charges against him. He also alleges that both of his trials were conducted in an atmosphere of unfair publicity which was highly prejudicial to the petitioner and contributed to his ultimate conviction. His final claim, upon which he received a plenary hearing in the state habeas corpus proceeding, was that he was subjected to an illegal police lineup and that this was the basis of a subsequent in court identification by the witness at his first trial.

Petitioner's claim that his constitutional rights were violated because he did not receive a preliminary hearing is patently without merit because it affirmatively appears from the record in the state court proceedings that the petitioner was indicted by a special grand jury in Roanoke, Virginia on January 2, 1968. In the absence of a statute providing otherwise, a preliminary hearing is not a prerequisite or an indispensable step in the prosecution of a person accused of crime. The applicable Virginia statute, section 19.1–163.1 of the Code of Virginia does not require a preliminary hearing after indictment, Webb v. Commonwealth, 204 Va. 24, 129 S.E.2d 22. The federal courts have upheld the constitutionality of this interpretation of the Virginia statute and have not required the state to provide a preliminary hearing when the accused has been previously indicted by a grand jury. Braxton v. Peyton, 365 F.2d 563 (4th Cir. 1966); May v. Peyton, 268 F.Supp. 928 (W.D.Va.1967) and Kerns v. Peyton, 292 F.Supp. 182 (W.D.Va.1968).

The petitioner's second contention, that of prejudicial publicity in each of his trials, is also without merit as it appears from the transcripts of the petitioner's two trials and his exhibits attached thereto that the complained of newspaper accounts were nothing more than normal responsible press coverage. The three newspaper articles were not inflammatory or exaggerated in nature and were in fact rather inconspicuously noted on secondary pages dealing with international news, local news, or the sports page. In addition to the responsible reporting job, the trial records indicate that there was adequate inquiry into the possible prejudicial effect such news coverage may have had on the jury. In fact in the second trial of the petitioner, after he had been convicted in his previous trial, the jurors were examined thoroughly on voir dire to guard against the possibility of unfair publici-

ty affecting their verdict. After such safeguards were diligently undertaken, it cannot be said that the trial judge committed constitutional error or even abused his discretion in disallowing the defendant's motion for a continuance and proceeding with the trial as provided for in section 19.1–190 of the Code of Virginia. That section requires that the trial be had at the term of court in which the indictment has been found unless good cause for a continuance be shown. A contrary rule would endanger the defendant's right to a speedy trial and such delays in criminal proceedings are not to be invoked lightly.

As to the petitioner's major contention, that of an illegally conducted police lineup and ineffective assistance of counsel at that lineup, it appears that the state has given the petitioner a plenary hearing on this issue pursuant to his position for habeas corpus in the state courts. At the time of the lineup, while he was being held on the charge of robbery by violence of Gerald Glass, he was identified by one George Otey as the negro male he had seen leaving the area of the Bank of Virginia shortly after the robbery of David Lee Arendt. Mr. Arendt, who also viewed the same lineup, but at a different time separate from Mr. Otey, was not able to make a positive identification of his assailant. Counsel who had been appointed to represent Mr. Couser on the Glass robbery charge was present and assisted in the conduct of the lineup.

■■■■ The trial judge at the state habeas corpus hearing found that the facts as brought out in that proceeding when viewed in the totality of the surrounding circumstances evidenced that the lineup procedures employed in the petitioner's identification were fair and constitutionally sound and that the petitioner had had the assistance of competent and conscientious counsel. Although this court is not to be bound by the state court's findings of law, this court will accept the state court's findings of fact which were elicited on the plenary evidentiary hearing on the peti-

tioner's state court habeas corpus proceeding. The record is fully developed as to this issue and Mr. Couser was ably represented by counsel during that proceeding.

Prior to the lineup in question, the petitioner had been arrested earlier for the robbery of one Gerald Glass and a search incidental to that arrest had yielded a revolver related to the Bank of Virginia (David Lee Arendt) case. This evidence was sent off to the F.B.I. Laboratory in Washington which confirmed the connection to the Arendt case since a bullet found at the scene of the Bank of Virginia matched those fired from the revolver taken from Mr. Couser. Before the lineup was conducted, a police detective had shown several photographs to the witness, Mr. Otey, who was unable to make a positive identification, but he stated that he could identify the man if he saw him in person. Only after these two preliminary procedures were checked out was the lineup conducted.

The lineup was conducted with meticulous care by both the police and Mr. Couser's previously appointed attorney. There were five persons in the lineup, all very much of the same physical build. In fact, the largest difference in weight between any of the five was a total of ten pounds and the largest difference in height was two and one-half inches. All of the participants were young negro males, all were of medium dark complexion, except one. The police and counsel went to great pains to assure that the participants in the lineup were dressed exactly alike in the typical Roanoke jail garb, brown denim shirts and darker trousers. The petitioner claims that he was the only person in the lineup forced to wear a long sleeved shirt. This is contradicted by every other witness including his counsel at the time of the lineup. These direct contradictions, the fact that the lineup was conducted in December and the fact that petitioner's counsel was present and was consulted as to every phase of the lineup makes this contention border on the incredu-

lous. In addition to the care taken as to the height, weight, complexion and apparel of the participants of the lineup, petitioner's counsel also requested that they wear caps to cover up a noticeable scar on the petitioner's forehead. This request was complied with by the Roanoke police before the lineup was conducted.

At the plenary hearing Mr. Otey testified that of the five men in the lineup he was acquainted with all of the participants because he once worked at an establishment where dances were held and he came into contact with many young men of this age group in the course of his job. He testified that he did not know any of them personally, but that he did know the names of all of the participants, except Mr. Couser who was known to him only by sight. Mr. Otey further testified that he would have been able to recognize any one of the participants had he seen him anywhere. At the petitioner's trial, Mr. Otey testified that Mr. Couser was the negro male he had seen leaving the area of the Bank of Virginia after what appeared to be the noise of a car backfiring. Mr. Otey testified that the petitioner appeared to quicken his pace and start into a run as he was parallel to the parking lot area where Mr. Otey was on duty.

Although Mr. Otey's trial testimony reveals that December 1, 1967 was a busy day due to the influx of Christmas shoppers, that he saw hundreds of people every day, and that he was unable to pick the petitioner's photograph out of a group of photographs shown him by police officers, he was nevertheless able to make a positive identification of Mr. Couser from a group of five persons very similar in dress, complexion and physical build. This positive identification of the petitioner in person was again repeated at his trial.

This court has carefully considered the application of United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L. Ed.2d 1149 and Gilbert v. California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 to the facts of the present case.

There can be no doubt that this was a very critical stage in the evolution of this case, but it is also apparent that Mr. Couser was ably assisted by counsel who exhibited a high degree of competence and conscientiousness. It appears that the police also conducted themselves with the greatest respect for the petitioner's rights. However, it is unfortunate that Mr. Otey was acquainted with so many of the lineup participants. As the trial court concluded, it is not at all unlikely that Mr. Otey in his capacity where he worked in the parking lot and in the dance hall on Saturdays would know casually or at least have seen most of the negro population of this age group in a city the size of Roanoke, Virginia. The court is convinced that this fact was a pure and simple coincidence and not a planned situation. Furthermore, the trial court found that Mr. Otey did not know any of the participants personally.

This court does not believe that the *Gilbert* and *Wade* decisions, *supra,* require or should they be extended to require the police to submit the names or individual pictures of all the lineup participants to the viewer before the lineup is conducted. It would seem that such a preliminary procedure would be fraught with the same objections of suggestion and possibility of error as the situation presently before the court. Such a procedure could very possibly preclude the conduct of such a lineup in any area of the country other than the large metropolitan areas. Since Mr. Otey testified that he recognized all of the participants by sight, this was not a case of one unfamiliar face in a lineup of personal acquaintances so as to be unduly suggestive that the petitioner was the guilty party. Recognizing this fact and the other extensive safeguards surrounding the lineup, this court is unable to conclude that Mr. Couser's constitutional rights have been violated. Although it is unfortunate that, after the exemplary conduct of the court appointed counsel and the cooperation of the police, Mr. Otey was acquainted with all the partici-

pants in the lineup, it cannot be said that the procedures employed were so unduly suggestive as to point to Mr. Couser and thereby violate his constitutional rights.

For the reasons discussed, the petition for a writ of habeas corpus is dismissed and relief is denied.

If the petitioner wishes to appeal this judgment or any part thereof, he should file with the clerk of *this* court within 30 days a notice of appeal. Failure to file notice of appeal within 30 days may result in a denial of the right of appeal. The notice of appeal shall state the following:

1. the judgment, order or part thereof appealed from;
2. the party or parties taking the appeal; and
3. the court (United States Court of Appeals for the Fourth Circuit) to which the appeal is taken.